2023 IL App (1st) 230867
No. 1-23-0867
Opinion filed October 27, 2023

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JANE DOE, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2022 L 011495) |
| CHAD READEY, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Israel A. Desierto, |
| | | Judge, presiding. |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices Hyman and Tailor concurred in the judgment and opinion.
Justice Hyman specially concurred, with opinion.

**OPINION**

¶ 1       In this interlocutory appeal, defendant Chad Readey appeals a trial judge's order denying defendant's motion to reconsider and, in the alternative, vacate another judge's order, which permitted plaintiff to proceed under a fictitious name. For the following reasons, we affirm the second judge's[1] denial of said motion.

¶ 2                                     BACKGROUND

_____

[1] The Honorable Israel Desierto.

¶ 3 On December 29, 2022, plaintiff filed a one-page, three-paragraph "Petition to File a Lawsuit Using a Fictitious Name." The petition stated in full:

"Pursuant to 735 ILCS 5/2-401 [(West 2022)], plaintiff Jane Doe, by and through her attorney, seeks leave to file a complaint under a fictitious name. In support of this motion, plaintiff states:

1. Under 735 ILCS 5/2-401[(West 2022)], a party may appear under a fictitious name 'for good cause shown.'

2. Plaintiff here has good cause. Plaintiff was sexually assaulted, as a minor, by defendant, which is a matter that is highly personal, private and sensitive. It is a source of humiliation and shame that she did not bring on herself. Plaintiff does not wish to be publicly branded as a victim of sexual abuse.

3. Given all this, plaintiff's interest in protecting her identity outweighs any interest the public may have in knowing it.

WHEREFORE plaintiff respectfully requests the Court permit her to file her lawsuit under a fictitious name."

Section 2-401(e) of the Code of Civil Procedure (Code) provides: "Upon application and for good cause shown the parties may appear under fictitious names." 735 ILCS 5/2-401(e) (West 2022).

¶ 4 On December 29, 2022, the trial court issued a one-page, five-paragraph order that stated in full:

"This matter coming to be heard on Plaintiff's Petition to Proceed Under a Fictitious Name, the Court being fully advised and having heard argument, the Court finds as follows:

Pursuant to *In re Marriage of Johnson*, 232 Ill. App. 3d 1068 (4th Dist. 1992), the Court has balanced Plaintiff's right to privacy against the public's right of access to open court proceedings. Plaintiff contends she has a compelling interest because she was a victim of sexual abuse, which is highly personal, private and sensitive.

The Court finds there is a compelling interest that favors Plaintiff's right to privacy in keeping her name from the public and such right is superior to the public's right of access to an open proceeding. See *Doe v. Doe*, 282 Ill. App. 3d 1078, 1088 (1st Dist. 1996).

The Court further finds that the privacy issue involved shall be protected in the least restrictive way possible. The Court finds that the least restrictive way to protect the privacy of Plaintiff is allowing her to proceed under a fictitious name.

The order may be reconsidered if Plaintiff takes any steps to make her name known to the public and shall be reconsidered by the trial judge at the time of jury selection. Plaintiff shall file a copy of the Complaint with her actual name under seal with the Clerk of the Court and to remain under seal until further order of the Court."

¶ 5 On December 29, 2022, plaintiff filed a two-count complaint against defendant alleging (1) a violation of the Gender Violence Act (740 ILCS 82/1 *et seq.* (West 2020)) and (2) intentional infliction of emotional distress. Plaintiff alleged that defendant sexually harassed and assaulted her while they were both students in high school.

¶ 6 The complaint further alleged that, during the 2019-20 school year, six female high-school students reported to the dean's office that defendant had engaged in sexually abusive conduct toward them; that the high school opened an investigation into "their star-student athlete"; that plaintiff did not report defendant at that time, although she did discuss his conduct

with close family and friends; that high school officials called her into their office and took a statement from her; that other classmates (but not plaintiff) publicly exposed the allegations against defendant on social media; that, in July 2022, defendant filed a defamation lawsuit against several classmates (but not plaintiff); and that, since filing suit, defendant threatened to add plaintiff to his defamation suit.[2] In support of the last allegation, plaintiff attached a letter from defendant's counsel, dated December 14, 2022, which stated that defendant would add her to his defamation suit by December 30, 2022, unless she contacted him before December 21 to discuss "alternatives." The letter further stated: "You are advised to promptly obtain legal counsel." Plaintiff filed her petition on December 29, the day before defendant threatened to name her as a defendant in his suit.[3]

¶ 7        The timestamps on plaintiff's petition to proceed anonymously, plaintiff's complaint, and the trial court's order permitting the petition indicate that all three documents were filed together at exactly 12:31 p.m. on December 29, 2022.

¶ 8        On January 10, 2023, defendant waived service of process, when his counsel executed a form "Acknowledgment of Receipt of Summons and Complaint," declaring under penalty of perjury that he had received a copy. On January 12, 2023, defendant filed an appearance in this action through his counsel.

¶ 9        On March 29, 2023, defendant filed a "Motion to Dismiss Plaintiff's Complaint," alleging two separate and independent grounds. First, defendant sought dismissal "because" plaintiff "filed suit under a fictitious name without the Court's permission" and, thus, violated

---

[2] According to the complaint, the counsel who sent her a threatening letter is the same counsel who represents defendant in the case below and on this appeal.

[3] Plaintiff's brief alleges that defendant added her on January 6, 2023, as a named defendant to his defamation action, and defendant does not dispute this allegation.

section 2-401(e). Second, defendant sought dismissal "because" plaintiff "cannot establish good cause after the fact," where she signed an affidavit in her own name in another case, in which she was not a party, but which contained similar allegations to her complaint here.[4] The seven-paragraph "Argument" section of defendant's motion was divided equally between the two grounds, with the first paragraph quoting the statute, and the next three paragraphs arguing the first ground, and the following three paragraphs arguing the second ground. With respect to any argument by plaintiff that she had cause to file anonymously, defendant asserted that "[t]his argument is meritless," and he marshalled case law and attached exhibits in support of this point. The heading of his March 29 motion named a trial judge (the Honorable Daniel A. Trevino), who was different than the judge (the Honorable James P. Flannery) who had issued the original December 29, 2022, order. His March 29 motion also contains a "Certificate of Service" on the last page stating that defendant's counsel served a copy on plaintiff's counsel by e-mail on March 29.

¶ 10    Defendant's motion further alleged that plaintiff's counsel published "Jane Doe['s]" allegations on counsel's website. In support, defendant attached a printout that he alleged was printed from plaintiff's counsel's website and that indicates that it was printed on January 23, 2023[5]. The text of the printout states that, "[t]oday," December 29, 2022, "Jane Doe filed a complaint" against defendant, and it describes her allegations against defendant. Defendant's motion stated that, although the allegations were no longer on her counsel's website as of March 13, 2023, it had become the source of other Internet articles. In support of his claim that

---

[4] The affidavit was submitted in support of a motion to dismiss a lawsuit filed by defendant against other parties. The affidavit is dated September 6, 2022, which was three months before defendant's letter on December 14, 2022, telling plaintiff to get an attorney.

[5] Three of the five pages are cut off at the top, and the page numbers in the bottom right-hand corner indicate that the pages are not in sequential order. For example, the first page states "1/9" while the second page states "4/11" and the third page states "2/9."

her counsel's website was the source of other articles, he attached what he alleged was the first page of a Google search for his name, which listed five entries. The first three entries refer favorably to his profile as a baseball player, and the fourth and fifth entries refer to his defamation suit. While the fourth entry is headlined "Northwestern baseball player sued for intentional infliction of ," the text for that entry states: "For over two years, Chad Readey has been the victim of a vicious, coordinated effort to assassinate his character based on falsehoods." Similarly, while the fifth entry is headlined "Gender Violence Lawsuit: HFHS Grad Sues Northwestern's," the text for this entry states: "The player—Chad Readey, of Flossmoor—has also filed a defamation lawsuit against several classmates who took to the university's social .."

¶ 11   On April 13, 2023, two weeks after his dismissal motion, defendant filed a second and separate motion entitled "Motion to Reconsider and In the Alternative to Vacate," which named Judge Flannery, the author of the December 29 order. In his prayer for relief, defendant asked "this Court to reconsider the December 29, 2022[,] order and deny Plaintiff's petition and, in the alternative, to vacate the order." Like defendant's first motion, this second motion also alleged (1) that plaintiff violated section 2-401(e) and (2) that she lacked good cause to file anonymously, because she signed an affidavit in her own name in another case with similar allegations. The April 13 motion contains a "Certificate of Service" stating that it was served on plaintiff's counsel by e-mail on April 13.

¶ 12   Defendant's April 13 motion alleged that plaintiff sent defendant a copy of the December 29, 2022, order on April 6, 2023, but the motion did not allege that this was the first he learned of the December 29 order. The motion further alleged that the December 29 order was injunctive but not a temporary restraining order.

6

¶ 13          On April 19, 2023, Judge Trevino issued an order setting forth a briefing schedule on defendant's "Motion to Dismiss and Motion to Stay," and required defendant to e-mail a Word or PDF file with all briefs, exhibits, and relevant documents to the court by 11 a.m. on May 24, 2023. Although the order refers to a motion to stay, the limited supporting records filed in this appeal by both parties do not contain a motion to stay. Additionally, our supporting record does not contain plaintiff's response brief or other documents showing whether the March 29 motion to dismiss was heard or decided or whether the briefing schedule was adhered to. Nevertheless, plaintiff's appellate brief alleges that she filed her responsive brief, which was due by May 9; that defendant did not file his reply which was due by May 23; and that the March 29 motion is still pending. Defendant does not dispute these allegations.

¶ 14          On April 20, 2023, defendant filed a "Response to Plaintiff's Request for Admission," in which he objected to plaintiff's request for admission "because motions to dismiss and to stay discovery are pending and subject to a briefing schedule set by Court order."

¶ 15          On April 25, 2023, yet a third trial judge, the Honorable Israel Desierto, issued a one-sentence order, which defendant alleges is the basis for jurisdiction of this appeal. Judge Desierto was neither the judge who issued the original December 29 order nor the judge who issued the scheduling order for defendant's prior motion. While the record before us does not contain a written response to the motion by plaintiff, the order was issued 12 days after defendant's motion was filed.

¶ 16          The April 25 order stated in full:

        "This cause coming to be heard before the court on motion of Defendant to Reconsider the order entered pursuant to Section 2-401(a) of the Illinois Code of Civil Procedure on December 29, 2022, both parties present through counsel, with the Court

properly advised on the premise[s], IT IS HEREBY ORDERED Defendant's motion is denied."

Defendant's counsel drafted the order, which was ostensibly against his interest. The order does not state the reasons for the denial[6] or whether the order was in anticipation of the resolution of defendant's soon-to-be fully briefed dismissal motion. The order also does not mention defendant's alternate motion to vacate. The one-line order was handwritten on a form with defendant's attorney listed as the drafting attorney.[7]

¶ 17     On May 15, 2023, defendant filed an interlocutory notice of appeal stating that he was appealing the order entered on April 25, 2023, pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 18                                 ANALYSIS

¶ 19                               I. Jurisdiction

¶ 20     The first issue we must resolve is whether, as plaintiff argues, we lack jurisdiction to hear this appeal. *People v. Brindley*, 2017 IL App (5th) 160189, ¶ 14 ("[t]he first issue we must address is the jurisdiction of this court to hear" the appeal).

¶ 21                       A. Court of Limited Jurisdiction

¶ 22     As an appellate court, our jurisdiction is limited, and those limits are expressly set forth in our state's constitution. The Illinois Constitution provides appellate courts with the jurisdiction or authority to review final judgments entered by a trial court. Ill. Const. 1970, art.

---

[6] Typically, a protective order is subject to an abuse-of-discretion standard of review, and a reviewing court considers the trial court's stated reasons for refusing to vacate when deciding whether the trial court did, or did not, abuse that discretion. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 226 (2000). Here, the losing party apparently drafted the order without any stated reasons, although a lack of stated reasons may itself be a ground for reversal. *Skolnick*, 191 Ill. 2d at 226.

[7] Plaintiff's appellate brief states that the order was drafted by defendant's attorney.

VI, § 6. Specifically, section 6 provides that "[a]ppeals from final judgments of a Circuit Court are a matter of right to the Appellate Court." Ill. Const. 1970, art. VI, § 6. As a result, an appeal to this court is generally taken only after a trial court has resolved all claims against all parties in an action. *Ely v. Pivar*, 2018 IL App (1st) 170626, ¶ 28.

¶ 23        However, section 6 of article 6 also provides that "[t]he Supreme Court may provide by rule for appeals to the Appellate Court from other than final judgments of Circuit Courts." Ill. Const. 1970, art. VI, § 6. Thus, when we are presented with a nonfinal judgment, our authority to hear that appeal is based solely on what our supreme court has permitted us to hear under its rules. *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 9 ("absent a supreme court rule, the appellate court is without jurisdiction to review" nonfinal orders). If we lack jurisdiction, we must dismiss the appeal. *In re Barion S.*, 2012 IL App (1st) 113026, ¶ 34 (if we determine we lack jurisdiction, we must dismiss the appeal).

¶ 24                              B. Standard of Review

¶ 25        Whether or not we, as an appellate court, have subject matter jurisdiction over an appeal is a matter that we consider *de novo*. See *In re Estate of Hughes*, 2020 IL App (5th) 190390, ¶ 13; *Todd v. Chaviano*, 2019 IL App (5th) 170081, ¶ 22. "[T]his issue, by its very nature, is one that the trial court did not consider and, thus, we review it *de novo* or on a blank slate." *People v. Hearring*, 2022 IL App (1st) 192064, ¶ 30.

¶ 26                              C. Statute at Issue

¶ 27        The appellant here asserts jurisdiction under Rule 307, which provides, in relevant part:

        "(a) Orders Appealable; Time. An appeal may be taken to the Appellate Court from
        an interlocutory order of court:

(1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction[.]

\* \* \*

Except as provided in paragraphs (b) and (d), the appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal \*\*\*. \*\*\*

(b) Motion to Vacate. If an interlocutory order is entered on *ex parte* application, the party intending to take an appeal therefrom shall first present, on notice, a motion to the trial court to vacate the order. An appeal may be taken if the motion is denied, or if the court does not act thereon within 7 days after its presentation. The 30 days allowed for taking an appeal and filing the Rule 328 supporting record begins to run from the day the motion is denied or from the last day for action thereon." Ill. S. Ct. R. 307(a) (eff. Nov. 1, 2017).

¶ 28    Defendant argued in the "statement of jurisdiction" (Ill. S. Ct. R. 341(h)(4) (eff. Oct. 1, 2020) section of his initial brief[8]: (1) that the April 25, 2023, order was an interlocutory order refusing to dissolve an injunction, pursuant to Rule 307(a)(1); (2) that, pursuant to subsection (a), the appeal from the April 25 order had to be perfected within 30 days; and (3) that defendant did just that by filing a notice of appeal on May 15, 2023.[9]

¶ 29    In her appellate brief, plaintiff argued that subsection (b) of Rule 307 governs here. Subsection (b) states that it applies when "an interlocutory order is entered on *ex parte*

---

[8]Defendant argued jurisdiction under subsection (a) in his initial appellate brief and argued jurisdiction under subsection (b) in his reply brief. Generally, "[p]oints not argued" in an appellant's initial brief "are forfeited and shall not be raised in the reply brief." Ill. S. Ct. R. 341(h) (7) (eff. Oct. 1, 2020).

[9]The statement of jurisdiction in defendant's brief stated that the notice was filed on May 17, 2022, but this appears to be a typo.

application," which is what happened in the case at bar. Ill. S. Ct. R. 307(b) (eff. Nov. 1, 2017). The first line of subsection (b) states, in full: "If an interlocutory order is entered on *ex parte* application, the party intending to take an appeal therefrom shall first present, on notice, a motion to the trial court to vacate the order." Ill. S. Ct. R. 307(b) (eff. Nov. 1, 2017). Plaintiff seems to interpret this line to mean that, when the challenging party is first "on notice" of the *ex parte* order, it must present a motion to the trial court to vacate the order, and she argues that defendant failed to act in a timely fashion. Plaintiff appears to be arguing that the phrase "on notice" refers to *when* the party must present the motion, as opposed to *how* the motion should be presented.

¶ 30       We do not read the statute that way. The phrase "on notice" modifies the word it immediately follows, namely, "present," and requires the presentation of the vacating motion to be "on notice." The word "on" is used as a preposition to indicate that the notice is in contact with or supported by something else: in this case the "motion" not the "*ex parte* order". Thus, in the case at bar, the vacating motion appears to be on notice, since the motion itself contained a certificate of service, and the resulting order stated that both parties were present through counsel.

¶ 31       We acknowledge that it is odd to impose a strict 30-day time limit in subsection (a) and then, in subsection (b), seemingly permit another party to sit on its hands for weeks or months without limit, after learning about an *ex parte* order. We recognize that a good argument could have been made that interpreting the two subsections as a unified whole might possibly require finding that a party, who intends to take an appeal from an *ex parte* order, must first present a motion to vacate within 30 days of learning of that order. However, plaintiff here did not make such an argument, and she does not offer any case law, cites to secondary sources, dictionaries

11

or grammatical texts, arguments by analogy, or other citations, except for the mere assertion that defendant failed to move in a timely fashion after he was "on notice" of the *ex parte* order. A reviewing court is entitled to have issues clearly defined with relevant authority cited. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 824 (2008). It is not necessary to decide an issue where a party has waived the issue by failing to offer case citation or other support. *Lozman*, 379 Ill. App. 3d at 824. "This court has repeatedly held that a party waives a point by failing to argue it." *Lozman*, 379 Ill. App. 3d at 824; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued are waived).

¶ 32    It is apparent from the record before us, that the following facts are beyond dispute: (1) that the December 29 order was injunctive as contemplated by Rule 307(a)(1); (2) that the December 29 order was an interlocutory order entered *ex parte*, as contemplated by Rule 307(b); (3) that defendant moved on April 13, 2023, to reconsider the December 29 order and in the alternative to vacate it; (4) that the trial court entered an order on April 25 stating that defendant's motion "to Reconsider" was denied; and (5) that defendant filed a notice of appeal on May 15, which was within 30 days of the April 25 order. Based on these undisputed facts, we find that we have jurisdiction to hear the within appeal of the April 25 order.

¶ 33                    II. Standard of Review and the Appellate Record

¶ 34    Having found jurisdiction to hear this appeal, we turn to the substantive issues before us, starting first with the appropriate standard of review. It is well established that a refusal to modify an order protecting information from disclosure is subject to an abuse-of-discretion standard of review. *Skolnick*, 191 Ill. 2d at 224 ; *Doe No. 1 v. Northwestern Memorial Hospital*, 2014 IL App (1st) 140212, ¶ 36 (a trial court's order permitting or denying a party the ability to proceed anonymously under section 2-401(e) will be reversed only for an abuse of

discretion). An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *People v. Woodson*, 2023 IL App (1st) 191353, ¶ 102. In determining whether the trial court abused its discretion, a reviewing court looks to the trial court's "stated justification for refusing to modify" the order. *Skolnick*, 191 Ill. 2d at 226.

¶ 35        In the case at bar, the one-sentence April 25 order did not provide any reasons at all. The losing party drafted the order without any stated reasons, although a lack of stated reasons may itself be a ground for reversal—*i.e.* for his winning a reversal on appeal. In light of this anomaly, we cannot find that a lack of stated reasons constitutes an abuse of discretion here.

¶ 36        Where no transcript or bystander's report of the proceedings was provided to us, and where no reasons were stated in the order itself, we presume that the trial court acted appropriately and that the reasons for its denial were provided on the record. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005) ("Without an adequate record preserving the claimed error, the reviewing court must presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law."). In her brief to us, plaintiff argues, "Defendant's counsel now cannot fairly contend that the trial court did not consider all the facts, especially when [d]efendant's counsel offers no court transcript to show otherwise." On appeal, it is generally the appellant's burden to provide the reviewing court with a sufficient record to establish the error that he complains of. *Webster v. Hartman*, 195 Ill. 2d 426, 436 (2001). "[A] reviewing court cannot look beyond the record and speculate on what may have occurred in the trial court." *Webster*, 195 Ill. 2d at 436. "A court of review is limited to the record before it." *Webster*, 195 Ill. 2d at 436. We "will not reverse a trial court's decision on the basis of speculation and conjecture." *Webster*, 195 Ill. 2d at 435.

¶ 37          Defendant's motion to reconsider or vacate made factual allegations that a trial court may have needed to resolve before deciding the motion. For example, defendant's motion alleged that "the facts establish that [p]laintiff not only made her identity known to the public *before* she petitioned the Court to appear under a fictitious name, she also made the material allegations in her complaint known to the public through an affidavit executed and filed in her own name." Defendant then cited her attached affidavit, which states, among other things, that the abuse she received from defendant empowered her "to help start a podcast relating to not accepting abuse from men." We do not know how the trial court resolved the factual issue regarding the degree to which plaintiff had publicized her name. We do not know what plaintiff argued before the trial court in response to defendant's motion, since neither her written response (if she filed one)[10] nor a transcript of the hearing is in the record before us. Without this information, it is impossible for us to find an abuse of discretion by the trial court for allegedly failing to vacate the original order.

¶ 38          In addition, defendant's motion to reconsider cited *Doe v. Cook County, Illinois*, 542 F. Supp. 3d 779, 785 (N.D. Ill. 2021), for the proposition that a party who has already made her name known to the public cannot establish good cause, and his appellate brief argues that at least six of the *Doe* factors favor him. First, *Doe* provided a "non-exhaustive" list of 13 factors that federal courts had previously considered to determine whether a party could proceed anonymously in federal court. *Doe*, 542 F. Supp. 3d at 785 (identifying 13 factors that federal courts had considered, including "[w]hether the movant's identity has been disclosed

---

[10] As we already noted above, the record does not indicate, one way or the other, whether plaintiff filed a written response; and the order was issued just 12 days after defendant's motion was filed. *Supra* ¶ 14. If plaintiff did not file a response, that makes the need for a transcript even more clear. The trial court's order stated that it was fully advised. By process of elimination, the only place that would reflect what the court was fully advised of, if no response was filed, would be in a transcript or bystander's report.

to the public or kept confidential"). If plaintiff's identity was already known to the public, this factor would weigh in defendant's favor. However, a number of the other federal factors listed by *Doe* would appear to weigh in plaintiff's favor, including (1) "[w]hether the case involves a highly sensitive and personal matter or requires the disclosure of the utmost intimacy," (2) "whether denying the motion would increase the likelihood that similarly situated plaintiffs would be chilled from bringing similar claims," and (3) "[w]hether the movant is a minor, or was a minor at the time of the conduct at issue." *Doe*, 542 F. Supp. 3d at 785. Without knowing what factors the trial court considered or how it weighed and balanced the factors it did consider, we cannot find it abused its discretion. The place to resolve factual disputes is in the trial court, not a court of review.

¶ 39      Since we lack a sufficient record to evaluate the trial court's action in denying defendant's motion, we cannot find an abuse of discretion and must affirm.

¶ 40                                        CONCLUSION

¶ 41      For the foregoing reasons, we affirm the trial court's denial of defendant's motion to vacate the injunctive order.

¶ 42      Affirmed.

¶ 43      JUSTICE HYMAN, specially concurring:

¶ 44      I agree with the majority's decision. I write separately to address the rights of an alleged victim of sexual violence to proceed anonymously with a complaint under the Gender Violence Act. 740 ILCS 82/1 *et seq.* (West 2020).

¶ 45      In a world where the Internet already has created privacy, confidentiality, and security issues, we now enter the age of artificial intelligence, exacerbating these issues and making secrecy vital. No longer, in famous observation of Justice Brandeis almost 100 years ago, is

"right to be let alone" enough. *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting). In the 21st century, the right to be left unknown will join the right to be let alone as a vexing subject of intense legal debate.

¶ 46    Indeed, the question of anonymity has taken on increased significance as court records have become readily available to the general public through even casual Internet searches. As the appellant notes in his brief, a Google search of a litigant's name can produce an untold number of articles describing the lawsuit. Those articles may be available online for a lifetime, unless kept confidential.

¶ 47    Although Illinois case law offers slight guidance on petitions to proceed anonymously, an alleged victim deserves anonymity whether or not their identity has been divulged elsewhere, including in a case not brought by them.

¶ 48                        Good Cause Under Section 2-401

¶ 49    Because of the presumption of openness in judicial proceedings (*Chicago Tribune Co. v. Cook County Assessor's Office*, 2018 IL App (1st) 170455, ¶ 51), the law disfavors suing or defending under a pseudonym in that the identity of the parties relates to the public nature of civil judicial proceedings. *A.P. v. M.E.E.*, 354 Ill. App. 3d 989, 1003 (2004) (citing *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997)). Thus, generally, parties for whom a pleading seeks relief are identified by name. 735 ILCS 5/2-401(c) (West 2020).

¶ 50    Section 2-401(e) of the Code of Civil Procedure provides an exception. This section allows a party to appear under a fictitious name on application and for good cause. 735 ILCS 5/2-401(e) (West 2020). Without a statutory definition of "good cause," courts "look to whether the party seeking to use a pseudonym has shown a privacy interest that outweighs the

public's interest in open judicial proceedings." *Doe v. Doe*, 282 Ill. App. 3d 1078, 1088 (1996) Usually, anonymity will be granted in "exceptional" situations "involving matters of a highly personal nature." *Id.* Whether a plaintiff's particular situation amounts to "exceptional" is determined on a case-by-case basis. *Doe No. 1 v. Northwestern Memorial Hospital*, 2014 IL App (1st) 140212, ¶ 44. The fundamental question involves whether the moving party has shown a privacy interest outweighing the public's interest in open judicial proceedings. *Doe*, 282 Ill. App. 3d at 1088. The standard of review for the trial court's determination stands absent an abuse of discretion. *Northwestern Memorial Hospital*, 2014 IL App (1st) 140212, ¶ 36.

¶ 51        Although no reported Illinois cases address whether a claim of sexual violence constitutes an "exceptional" situation warranting the use of a pseudonym, federal courts in Illinois have recognized that allegations of sexual assault are "highly sensitive, personal matters that involve the disclosure of information of the utmost intimacy." *Doe v. Cook County, Illinois*, 542 F. Supp. 3d 779, 786 (N.D. Ill. 2021); accord *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)  (while the Seventh Circuit disfavors fictitious names, it has "recognized that sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity" (citing *Doe*, 112 F.3d at 872)). Even so, a sexual violence allegation alone has been considered not dispositive. See *Cook County, Illinois*, 542 F. Supp. 3d at 786 ("allegation of sexual assault alone does not end the inquiry"); *Doe v. Skyline Automobiles, Inc.*, 375 F. Supp. 3d 401, 405-06 (S.D.N.Y. 2019) ("other factors must be taken into consideration and analyzed in comparison to the public's interest and the interests of the opposing parties").

¶ 52        Illinois has taken steps to protect individuals' private information. Examples include the Personal Information Protection  Act (815 ILCS 530/1 *et seq.* (West 2022)), and the Biometric Information Privacy Act (740 ILCS 14/1 *et seq.* (West 2022)), and two laws

regulating data obtained by artificial intelligence, the Artificial Intelligence Video Interview Act (820 ILCS 42/5 (West 2022)) and the Illinois Health Statistics Act (410 ILCS 520/1 *et seq*. (West 2022)). Nonetheless, the law cannot keep pace with the speed of innovations, compromising privacy. Corinne Moini, *Protecting Privacy in the Era of Smart Toys: Does Hello Barbie Have A Duty to Report*?, 25 Cath. U.J.L. & Tech. 281, 299 (2017) (asserting that privacy torts do not provide adequate protection for privacy implications of artificial intelligence and data collection). When methods of intruding into private lives and stripping anonymity outpace lawmakers' ability to address them, courts have a duty under existing rules of procedure to protect sexual assault and abuse victims.

¶ 53    Plaintiff, a minor when the alleged sexual assault occurred, undeniably constitutes an "exceptional" situation. The lawsuit involves matters of a highly personal nature warranting anonymity. Indeed, Illinois Supreme Court rules acknowledge the need for anonymity in cases involving minors. For instance, the Illinois Supreme Court rules provide that minors shall be identified by first name and last initial or by initials in adoption cases (Ill. S. Ct. R. 663 (eff. Oct. 1, 2001) and appeals involving the Juvenile Court Act of 1987 (705 ILCS 405/1 *et seq*. (West 2022)). Ill. S. Ct. R. 660(c) (eff. Oct. 1, 2001). Moreover, the Style Manual for the Supreme and Appellate Courts of Illinois (5th ed. rev. 2017) provides for using the minor's initials in cases involving the Department of Children and Family Services. These rules reflect the need to protect the identity of a minor in matters of a personal nature that involve potentially stigmatizing issues such as termination of parental rights or juvenile criminal conduct.

¶ 54    An alleged victim of sexual violence has similar reasons for protecting their identity when filing a lawsuit under the Gender Violence Act. The alleged conduct involves highly personal conduct likely to embarrass and stigmatize, regardless of its availability on the

Internet. Thus, I would find that an alleged victim has a compelling reason to proceed anonymously when filing a complaint. Similarly, an accused perpetrator should be able to seek anonymity on petition.

¶ 55                                                  Waiver

¶ 56        The appellant contends that Doe waived her right to proceed anonymously because she filed an affidavit supporting a motion to dismiss the defamation lawsuit the appellant filed against his other accusers. (The appellant added Doe as a defendant in the defamation litigation after she filed her complaint.) I must disagree that she waived her right.

¶ 57        When Doe filed the affidavit in the defamation case, she had yet to file her complaint against defendant. The decision to help another litigant should not bar an individual from proceeding anonymously in their own lawsuit, regardless of an affidavit in another proceeding. Filing suit creates a different level of exposure than filing an affidavit in support of others.

¶ 58        Imposing waiver would chill alleged victims of sexual violence from coming forward, thereby undermining Illinois policy. For example, the Sexual Assault Incident Procedure Act (725 ILCS 203/15 (West 2020)) requires Illinois law enforcement agencies to develop and implement written policies for responding to sex crimes using evidence-based, trauma-informed, and victim-centered protocols. In addition, laws protect college students who survive sexual violence from public disclosure of communications they make in confidence to confidential advisors (735 ILCS 5/8-804(c) (West 2022)) and prohibit hospitals treating sexual assault victims from directly billing the victims for the services, communicating with victims about a bill, or referring overdue bills to collection agencies or credit reporting agencies. 410 ILCS 70/7.5(a)(1)-(4) (West 2022). These recently enacted laws encourage victims to report sexual violence. Yet, should a victim waive anonymity by assisting another alleged victim, the

intent of these laws would be thwarted. An alleged victim of sexual violence should not have to choose between assisting others in the legal process and their privacy in their case.

---

### *Doe v. Readey*, 2023 IL App (1st) 230867

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2022-L-011495; the Hon. Israel A. Desierto, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Victor P. Henderson and Colin Quinn Commito, of Henderson Parks, LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Tamara N. Holder, Law Firm of Tamara N. Holder LLC, of Chicago, for appellee. |

---