2025 IL App (1st) 232412-U
Order filed: March 20, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-2412

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| VICTOR LOBELLO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 22 M1 109179 |
| | ) | |
| DOMENICO LOBELLO, | ) | Honorable |
| | ) | Maire Aileen Dempsey, |
| Defendant-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirmed the circuit court's judgment in favor of defendant on his counterclaims for breach of contract and unjust enrichment.

¶ 2    Plaintiff, Victor Lobello, filed a complaint for breach of contract against his brother, defendant Domenico Lobello. Plaintiff alleged that he entered into a contract to purchase defendant's Honda Accord and that plaintiff made all the required payments under the contract. Defendant allegedly breached the contract by refusing to give plaintiff title to the vehicle. Defendant filed four counterclaims. In the first counterclaim, defendant alleged that he loaned plaintiff $5,000 to help him pay off a car loan on a Ford Focus, with the agreement that plaintiff would pay him back after selling the vehicle. Plaintiff subsequently sold the Ford Focus but

breached his agreement with defendant by failing to pay back the car loan. In the second counterclaim, defendant sought repayment of the car loan under a theory of unjust enrichment. In the third counterclaim, defendant alleged that he made a $7,000 loan to plaintiff in April or May 2020 to make home repairs with the agreement that plaintiff would repay him in three years. Plaintiff breached the agreement by failing to repay him. In the fourth counterclaim, defendant sought repayment of the home repair loan under a theory of unjust enrichment.

¶ 3　　The cause proceeded to a bench trial, after which the court entered judgment in plaintiff's favor on his complaint for breach of contract and ordered defendant to provide plaintiff with the title to the Honda Accord within 10 days. The court also entered judgment for defendant on his counterclaims in the amount of $5,295. Plaintiff appeals the $5,295 judgment rendered against him on defendant's counterclaims. For the reasons that follow, we affirm.

¶ 4　　There is no transcript of the bench trial, but we granted plaintiff's motion to file an agreed statement of facts pursuant to Illinois Supreme Court Rule 323(d) (eff. July 1, 2017). According to the agreed statement of facts, plaintiff testified that in 2018 he and his wife, Cynthia, agreed to buy defendant's Honda Accord for $11,000. Also in 2018, defendant loaned plaintiff $6,100 to pay off a car loan on a Ford Focus.

¶ 5　　Plaintiff identified Exhibit 3 as a handwritten ledger drafted by defendant on an unidentified date showing that plaintiff owed defendant $17,100 for both the Honda Accord and the car loan for the Ford Focus, as well as an additional $775 for unidentified home costs, $380 for new tires for the Ford Focus, and $102 for a City of Chicago sticker for the Honda. Exhibit 3 reflected that plaintiff made various payments to defendant in October and November 2018 reducing the amount owed to $17,045. Exhibit 5 is a handwritten ledger reflecting that plaintiff

made four $200 payments to defendant from December 2018 to February 2019, further reducing the total amount owed as of February 7, 2019, to $16,245.

¶ 6　Plaintiff identified Exhibit 7 as a ledger drafted by plaintiff on an unidentified date showing that he made $1,800 in total payments to defendant from February 18, 2019, to July 14, 2019, reducing the total owed to $14,445.

¶ 7　Plaintiff identified Exhibit 1 as the only written agreement between the parties. Exhibit 1 was dated July 14, 2019, and stated that as of that date plaintiff owed defendant $10,950, to be repaid by making $200 payments twice per month. In the event the monthly payment was more than five days late, defendant had the option of terminating the agreement, in which case "the Honda Accord is to be returned" to defendant within 10 days.

¶ 8　Plaintiff testified to his understanding that Exhibit 1 memorialized multiple different agreements, specifically, the agreement to purchase the Honda Accord and the agreement to repay defendant for the car loan for the Ford Focus, as well as agreements to repay defendant for various miscellaneous items including $775 in home costs, $300 for tires, and $102 for a City sticker for the Honda. According to plaintiff, Exhibit 1 shows that the total amount plaintiff owed defendant as of July 14, 2019, for both the sale of the Honda Accord and the Ford Focus loan and the other miscellaneous items was $10,950. Plaintiff testified that he subsequently sold the Ford Focus to a third party for $4,500 but that he did not give any of those proceeds to defendant to repay him for the loan.

¶ 9　Plaintiff testified that he later paid defendant the $10,950 he owed on both the purchase of the Honda and the car loan for the Ford Focus and the other miscellaneous items. Plaintiff identified Exhibit 6 as a handwritten ledger showing that he made the final two payments in the

amounts of $3,375 and $3,337.50, leaving a balance of $0. Plaintiff identified defendant's initials (dated 5/16/2020) next to the words "Pd. Full."

¶ 10    Defendant testified that he initialed "Pd. Full" on the last entry on Exhibit 6, but that plaintiff still owed him $300 or $600 more for the Ford Focus loan.

¶ 11    Defendant further testified that he loaned plaintiff $7,000 in April or May 2020 for home repairs. The loan allegedly was made through an intra-bank transfer, but defendant had no documentation from the bank showing that such a transfer was made. Plaintiff testified that he never borrowed $7,000 from defendant for home repairs.

¶ 12    During cross-examination, defendant asked plaintiff about Exhibit 2, a written ledger indicating that defendant made a loan of $1,960 to plaintiff for window installation in December 2018. Plaintiff testified that he never signed Exhibit 2.

¶ 13    On June 28, 2023, the circuit court entered an order finding that Exhibit 1 (the July 14, 2019, written agreement) memorialized defendant's sale of the Honda Accord to plaintiff and that as of July 14, 2019, plaintiff owed defendant $10,950 on the vehicle. The court further found that plaintiff subsequently made the $10,950 payment to defendant and was entitled to the title to the Honda Accord. Therefore, the court entered judgment for plaintiff on his breach of contract action and ordered defendant to provide plaintiff with title to the Honda Accord within 10 days.

¶ 14    The court then addressed defendant's counterclaims. As to the first and second counterclaims seeking recovery for the car loan for the Ford Focus, the court noted that plaintiff admitted receiving the loan from defendant and that plaintiff subsequently sold the Ford Focus to a third party for $4,500 but kept the proceeds for himself. The court ruled that plaintiff must pay the $4,500 to defendant to reimburse him for the loan.

¶ 15     As to the third and fourth counterclaims seeking recovery for a $7,000 home repair loan made in April or May 2020, the court found that there were no bank statements showing that such a loan was made. However, the court noted that "[t]he ledgers submitted do reflect loans for windows and home repairs, and the court finds that, despite their testimony to the contrary, [plaintiff] accepted loans for home repairs." The court determined that defendant was entitled to repayment of $795 for the home repair loans. Adding the $795 for the home repair loans to the $4,500 due for the car loan for the Ford Focus, the court entered judgment in favor of defendant on his counterclaims in the amount of $5,295.

¶ 16     Plaintiff filed a posttrial motion to vacate the June 28, 2023, order awarding defendant $5,295 on his counterclaims, which the circuit court denied. Plaintiff filed a notice of appeal on December 18, 2023. On August 21, 2024, defendant's former counsel filed a motion to spread record of death, informing the court that defendant died on July 10, 2023. No argument is made on appeal that defendant's causes of action as set forth in his counterclaims abated upon his death. See *Tunnell v. Edwardsville Intelligencer, Inc.*, 43 Ill. 2d 239, 242 (1969) ("there is no abatement upon the death of a party if the litigation has progressed to a point at which the merits of [the party's] allegations have been affirmatively determined").

¶ 17     On February 26, 2025, we entered an order taking this case for consideration on plaintiff's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (the reviewing court may decide a case on the appellant's brief alone "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief").

¶ 18     First, plaintiff argues that the circuit court erred in finding that Exhibit 1, the July 14, 2019, written agreement, only memorialized plaintiff's purchase of the Honda Accord for $10,950.

Plaintiff contends that the agreement actually memorialized the monies plaintiff owed to defendant not only for the Honda Accord, but also for the car loan for the Ford Focus and certain miscellaneous items, meaning that once plaintiff paid defendant the $10,950, he owed defendant no further monies. Therefore, the court should have entered judgment in plaintiff's favor on all of defendant's counterclaims. In support, plaintiff notes that Exhibit 1 states that the sales price of the Honda Accord originally was $11,000, but it elsewhere states that the amount owed as of the date of the agreement was $10,950. Plaintiff contends that the fact that the agreement contains two different monetary amounts—$10,950 and $11,000—renders it ambiguous, requiring the circuit court to look at parol evidence showing that the agreement reflected the total amount of money owed for both the Honda Accord and for the car loan for the Ford Focus and the miscellaneous items.

¶ 19    When interpreting a contract, our primary goal is to effectuate the parties' intent. *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 22. Where the contractual terms are unambiguous, we ascertain the parties' intent from the express language of the contract, as a matter of law. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888 (1995). If the contractual terms are ambiguous, parol evidence may be considered to determine the parties' intent. *Id.* Contractual language is not ambiguous simply because the parties disagree as to its interpretation. *Id.* Disagreement as to interpretation must be reasonable, and we will not endeavor to find an ambiguity where none exists. *Id.* We review *de novo* the issue of contract ambiguity. *Id.*

¶ 20    The written agreement at issue here, Exhibit 1, unambiguously references only the sale of the Honda Accord by defendant to plaintiff and never references the car loan for the Ford Focus or any other monies allegedly owed to defendant. The two different monetary amounts referenced in Exhibit 1 merely reflect that the original sales price of the Honda Accord was $11,000, and that

as of the date of the agreement, plaintiff had paid $50 and now owed the remaining $10,950 on the Honda. As such, the circuit court correctly concluded that plaintiff's subsequent payment of the $10,950 only satisfied the amount he owed defendant for the Honda Accord and did not satisfy the amounts at issue in defendant's counterclaims for the car loan for the Ford Focus and the home repair loans.

¶ 21    Next, plaintiff argues that the circuit court erred in determining that he failed to repay defendant for the $5,000 car loan for the Ford Focus and awarding defendant the $4,500 plaintiff received from the sale of the Ford Focus as repayment for that loan. Plaintiff argues that defendant admitted at trial that plaintiff only owed him between $300 and $600 for the car loan and therefore that we should reduce the $4,500 award to $600.

¶ 22    The record is insufficient to support plaintiff's argument. As discussed, no transcript was provided to us of the court proceedings; instead, we allowed plaintiff to file an agreed statement of facts. In pertinent part, the agreed statement of facts states only that "[Defendant] testified that [plaintiff] owed [defendant] $300 or $600 more for the Focus." This statement is susceptible to different meanings; it could mean, as plaintiff argues, that he paid defendant the entire amount due for the car loan on the Ford Focus except for $300 to $600. However, it could also mean that plaintiff owes defendant $300 to $600 in addition to owing him the $4,500 received from the sale of the vehicle. Such an interpretation is plausible given the other evidence in the record. Specifically, in his counterclaim, defendant argues that he paid off plaintiff's bank loan for the Ford Focus in the amount of $5,000, with the agreement that plaintiff would pay defendant back when he sold the vehicle. Defendant alleged that plaintiff sold the vehicle during 2020 for $4,500 but failed to pay any of those proceeds to him, "nor did [plaintiff] pay back any of the $5,000 lent to him by [defendant] for the Ford Focus." At trial, plaintiff admitted to the agreement that he

would sell the Ford Focus after receiving the car loan from defendant, and he further admitted to selling the Ford Focus for $4,500 to a third party and failing to remit the sales proceeds to defendant. On this record, we cannot say that the court's $4,500 award to defendant for repayment of the car loan was against the manifest weight of the evidence. See *King v. Find-A-Way Shipping, LLC*, 2020 IL App (1st) 191307, ¶ 28 (where an award of damages is made after a bench trial, our standard of review is whether the court's judgment is against the manifest weight of the evidence).

¶ 23    Next, plaintiff argues that the circuit court erred by awarding defendant $795 as repayment for the home repair loans, where defendant never pleaded such a claim. Plaintiff cites *Tison & Hall Concrete Products Co. v. A.E. Asher, Inc.*, 86 Ill. App. 2d 34, 37 (1967) and *Finn v. Project Resource Solutions, LLC*, 2024 IL App (1st) 221016, ¶¶ 43-45, which hold that a judgment must conform to the pleadings. *Finn* elaborated:

> " 'It is a fundamental rule, with no exceptions, that a party must recover, if at all, on and according to the case he has made for himself by his pleadings. He cannot make one case by his averments, and have judgment on another and different ground, even though the latter is established by the proof.' " (Internal quotation marks omitted.) *Id.* at ¶ 43 (quoting *Broberg v. Mann*, 66 Ill. App. 2d 134, 137-38 (1965)).

¶ 24    Plaintiff contends that defendant's counterclaims failed to plead a cause of action for the recovery of the home repair loans, and as such the circuit court erred by awarding defendant judgment on that ground.

¶ 25    We disagree. Counts III and IV of defendant's counterclaims pleaded recovery (based on breach of contract and unjust enrichment) for a home repair loan defendant made to plaintiff in April or May 2020 in the amount of $7,000, which plaintiff allegedly never repaid. The circuit court determined from the evidence at trial that defendant failed to produce any bank statements

showing home repair loans, but that plaintiff did produce ledgers showing loans for home repairs. The court expressly found from the ledgers that plaintiff "accepted loans for home repair" and awarded him $795 under counts III and IV. Thus, this is not a case where defendant pleaded one cause of action in his counterclaims and received judgment on the basis of a different cause of action, which would constitute reversible error. *Id.* Rather, defendant pleaded claims for breach of contract and unjust enrichment arising out of plaintiff's alleged failure to repay a home repair loan, and the court awarded defendant judgment in his favor based on those pleadings and the evidence (the ledgers) admitted at trial. We find no reversible error.

¶ 26    For all the foregoing reasons, we affirm the circuit court.

¶ 27    Affirmed.