NOTICE

Decision filed 08/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241230-U

NO. 5-24-1230

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| EZRA J. TEMKO and DREW M. TEMKO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Madison County. |
| | ) | |
| v. | ) | No. 24-SC-467 |
| | ) | |
| ANDREA L. WALSH, | ) | Honorable |
| | ) | Ronald S. Motil, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Where the plaintiffs filed a small claims complaint against the defendant, alleging defamation, we reverse and remand the matter, determining that it was erroneous for the trial court to prematurely terminate the plaintiffs' presentation of evidence and to rule in favor of the defendant.

¶ 2     On February 22, 2024, the plaintiffs Ezra J. Temko and Drew M. Temko filed a small claims complaint against their neighbor, Andrea L. Walsh, the defendant, alleging defamation and seeking $1,000 in moving costs. The trial court conducted a bench trial on October 2, 2024, and found in favor of the defendant. For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

¶ 3                                I.  BACKGROUND

¶ 4     The plaintiffs filed a small claims complaint on February 22, 2024, against their neighbor,

1

the defendant, alleging defamation and seeking $1,000 in moving costs. The defendant was served on May 30, 2024, and filed an answer on June 25, 2024, denying the allegations in the complaint. She also filed a counterclaim alleging "defamation of character and harassment on social media platforms" and sought $2,357.46 in damages.

¶ 5    The matter was set for hearing on August 7, 2024. The plaintiffs appeared, but the defendant did not, and a default judgment was entered against her for $1,000 plus costs. On August 27, 2024, the defendant filed a motion to vacate the default judgment, indicating that the notice to appear in court was delivered to her after the court date of August 7, 2024. On August 28, 2024, without the presence of either party, the trial court granted the motion to vacate and set the matter for a bench trial on October 2, 2024.

¶ 6    On September 11, 2024, the plaintiffs filed a "motion to reconsider and deny motion to vacate default judgment." They asserted that the notice to appear was "sent on time" as they received it on July 22, 2024, and July 25, 2024. All matters were called for hearing on October 2, 2024. According to the certified bystander's report, after hearing argument from the plaintiffs, the trial court explained that motions to vacate default judgments were customarily granted and denied the motion to reconsider.

¶ 7    The plaintiffs then requested a continuance for time to retain an attorney, which was denied. The plaintiff (as it is unclear from the bystander's report which "Temko" is speaking or arguing, "plaintiff" will be used interchangeably when referring to either plaintiff) then testified that they moved to Edwardsville in the summer of 2018, and that things started going downhill with their neighbor, the defendant, at the beginning of the pandemic. On March 10, 2021, the plaintiff sent a cease-and-desist letter to the defendant and a copy to the police department, who

2

issued the defendant a notice of no trespass. A copy of the letter was presented as an exhibit, and the plaintiff read the following portion:

> "On multiple occasions you have screamed at Drew Temko and/or at Ezra Temko, including in front of our child. You have yelled belittling comments, such as saying we are pathetic or disgusting, everyone hates us, we are ruining this town. You have yelled homophobic comments, such as calling us child stalkers or falsely claiming that we harass your children. This most recently occurred on March 3, 2021, and March 9, 2021. On September 28, 2020, you came onto Drew and Ezra Temko's property, rang the bell, and when the door was answered—in front of our child—you immediately proceeded to scream at and threaten us."

¶ 8 The plaintiff testified that the defendant went from disagreeing with their politics to lying about them and falsely accusing them of crimes. The defendant called members of the LGBTQ community "child predators, pedophiles, and the like." The plaintiff indicated that the cease-and-desist letter informed the defendant that her family does not have permission to be on their property, "or to spit gum onto or otherwise vandalize or litter onto our property." He stated that the defendant had defamed them in April and May of 2023, when she told the police that the plaintiff was stalking and harassing her children and that the plaintiff had hid in the bushes to record them.

¶ 9 The trial court inquired about moving costs, and the plaintiff responded that he had not "gotten to the main defamation that occurred within the statute of limitations time period." He indicated he was trying to establish the foundation by providing background information. He told the trial court that the defendant lied to the police, such as telling them that the plaintiff thinks the defendant is a racist because she supports Donald Trump. Because the defendant knew the

3

plaintiffs were not President Trump supporters, she painted a Donald Trump slogan on the side of her house that is only visible to the plaintiffs. The plaintiff admitted that nothing was illegal about it, but that it was done to spite them.

¶ 10    The trial court interrupted that the plaintiff, stating that it sounded like a neighborly dispute, that there were many other cases in front of him, and that he was busy. The trial court noted that it would not rule in the plaintiffs' favor because it would not set a precedent for moving costs. The trial court did not want "everyone suing every time they moved because they didn't like their neighbor or had a neighborly dispute." The plaintiff explained that it was not a neighborly dispute, but rather a case of defamation, and the moving costs were included because he was unsure what to claim as damages. The plaintiff indicated that they were much less concerned about the moving costs than about obtaining a ruling in their favor regarding defamation.

¶ 11    The trial court indicated that it was prepared to issue a ruling, and the plaintiff informed the trial court that he had not "even gotten to present the instances of defamation that the case was about." The trial court responded, "This case isn't about defamation," and it would not award moving costs. The plaintiff requested a finding of defamation and an award of one cent. The trial court stated, "the complaint was written about moving costs, and I'm not going to award moving costs. If you meant this to be a defamation case then you wrote the complaint wrong," and ruled against the plaintiffs. The plaintiff inquired whether he could amend the complaint, and the trial court responded that he could appeal.

¶ 12    On October 4, 2024, the plaintiffs filed a motion to vacate the order, requesting that the order be vacated and that they be allowed to amend the complaint. They indicated that they thought they were suing for defamation, "and learned at trial that was not how their complaint was written." On October 10, 2024, the trial court, without the presence of either party, entered a written order

4

denying the plaintiffs' motion. On November 12, 2024, the plaintiffs timely filed a notice of appeal.

¶ 13                                          II. ANALYSIS

¶ 14    On appeal, the plaintiffs raise several arguments. First, they argue that the trial court erred by improperly terminating the trial before they could present their evidence of defamation. They claim that the trial court cut off their testimony, refused to allow them to show police reports, and interrupted them. They maintain that the "premature termination of the trial violated the most basic tenets of due process."

¶ 15    Second, they assert that the trial court's characterization of the case as a "neighborly dispute" ignored the serious nature of the defamation claim and violated small claims procedures. They contend that their claim complied with Illinois Supreme Court Rule 281 (eff. Jan. 1, 2022) for small claims, and thus, the informal nature of the proceedings should have been followed. They point out that Madison County's local rules provide that, where the amount does not exceed $1,000 as here, "all relevant evidence shall be admissible that the court may relax the rules of procedure and the rules of evidence." They claim that instead of following this rule, the trial court "imposed stricter limitations than normally would apply in regular civil proceedings," thus preventing them from introducing evidence.

¶ 16    The plaintiffs thirdly argue that the trial court's premature termination of the case to avoid setting a precedent of awarding moving costs was improper. Finally, the plaintiffs say that the trial court abused its discretion in refusing to allow them to amend their complaint to clarify their request for damages. They request that we reverse and remand to the trial court for a complete hearing.

¶ 17    In response, the defendant argues that the trial court did not err in granting judgment in favor of defendant because the plaintiffs failed to meet their burden of proof. She contends that the plaintiffs were able to present their case in full and that the trial court entered its ruling at the conclusion of their evidence. She maintains that the plaintiffs failed to prove defamation and that their "only evidence presenting during their case in chief was of Ezra Temko's biased testimony (read from a written statement he prepared) which only established a neighborly dispute with Walsh." She argues that the plaintiffs failed to provide evidence of defamatory statements and had no unbiased witnesses testifying. She also contends that the reports made by the defendant to police regarding the plaintiffs were privileged because they were made to law enforcement officials to institute legal proceedings, citing *Littledale v. Sima*, 2024 IL App (2d) 220177-U. Finally, the defendant asserts that the trial court did not abuse its discretion in denying the plaintiffs' oral motion to amend the complaint on the day of trial, because the motion to amend only came after it was clear that the trial court would rule against them. She requests that we affirm the trial court's ruling.

¶ 18    In their reply brief, the plaintiffs reiterate that the trial court denied them due process by prematurely terminating their case. They maintain that they were not allowed to present their evidence completely. They state they had video, audio, exhibits, and text messages that were not introduced because their presentation had been "cut off by the judge." They additionally assert that the trial court erred in denying their motion to amend the complaint.

¶ 19    We begin our analysis by first discussing the bystander's report prepared by the plaintiffs, as some of it conflicts with the version of events in the defendant's brief. "It is well established that, on appeal, the party claiming error has the burden of showing any irregularities that would justify reversal." *In re Linda B.*, 2017 IL 119392, ¶ 43 (citing *Flynn v. Vancil*, 41 Ill. 2d 236, 241

6

(1968)). For us to review claims of error, the plaintiffs, as the appellants, were required to file either a report of proceedings of the hearings or a bystander's report pursuant to Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021) and Illinois Supreme Court Rule 323 (eff. July 1, 2017). "It is the responsibility of every appellant to provide a complete record on appeal." *King v. Find-A-Way Shipping, LLC*, 2020 IL App (1st) 191307, ¶ 29. *Pro se* litigants are held to a lesser standard in complying with the rules for appeals but are still "required to meet a minimum threshold in providing the court with an adequate record to review the issues raised on appeal." *Id*. In general, "[t]o determine whether the trial court made the error which appellant is claiming, a court of review must have before it the record of the proceedings where the error was allegedly made." *Id.* ¶ 31.

¶ 20    Illinois Supreme Court Rule 323 (eff. July 1, 2017) outlines the contents and preparation of a report of proceedings, providing three different ways a report of proceedings can be properly submitted. "[A]n acceptable report of proceedings must necessarily comply with Rules 323(a) and 323(b), a conventional report of proceedings, Rule 323(c), a bystander's report or Rule 323(d), an agreed statement of facts. No other method or device is permitted or acceptable." *People v. Bruhn*, 51 Ill. App. 3d 269, 271 (1977). In other words, a proper report of proceedings must be in the form of (1) certified transcripts of hearings prepared by a court reporter, (2) a bystander's report, or (3) an agreed statement of facts. "An issue relating to a [trial] court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Corral v. Mervis Industries*, Inc., 217 Ill. 2d 144, 156 (2005).

¶ 21    The record reflects that on December 10, 2024, the plaintiffs filed a motion to approve a bystander's report, indicating that they had initially reached out to the defendant on November 29, 2024, regarding an agreed statement of facts and received no response. The bystander's report attached to their motion differed from the one certified by the trial court, indicating that changes

7

were made by either the trial court or the parties before certification. Nevertheless, the trial court certified a bystander's report on January 27, 2025.

¶ 22    One of the plaintiffs' arguments on appeal is that they were not permitted to present their entire case in chief. However, the defendant states multiple times in her brief, "at the close of Plaintiff's case," indicating her belief that the plaintiffs fully presented their evidence and then rested. In other words, the parties differ concerning how the plaintiffs' case in chief concluded. To further complicate matters, a docket entry from the day of trial simply states, in part, "Court having heard testimony finds that [Plaintiffs] failed to meet their burden." It does not specify that the parties' evidence was completely presented and considered. "Generally, any doubts arising from an incomplete record will be resolved against the appellant. [Citations.] This principle is commonly referred to as the *Foutch* principle." *People v. Majka*, 365 Ill. App. 3d 362, 368 (2006); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). However, this principle cannot be applied "so broadly as to render a bystander's report worthless; we must assume a bystander's report is materially complete on the points it addresses." *Majka*, 365 Ill. App. 3d at 368. The reviewing court presumes that the author of a report has not withheld relevant information. *People v. Berg*, 182 Ill. App. 3d 431, 432 (1989). As stated in *Majka*:

"We deem a rule like that in *Berg* to be a necessity if any case with factual issues is to be reviewable using a bystander's report. If we were always to assume that a report has left out some fact critical to the trial court's decision, a report would rarely help an appellant and therefore would almost never allow an effective appeal. Suppose, for instance, that a defendant submits a bystander's report describing the evidence presented at his trial and claims that the evidence was insufficient to support a guilty verdict, and we deem that the evidence, as represented in the report, supports that claim. Were we then to

8

apply the *Fouch* principle (based on the inherent limitations of a bystander's report) to decide that the State must have put on some piece of evidence not mentioned in the report but sufficient to support the verdict, the report would be pointless. In order for a report to have any value, we must assume that the court or an opposing party will correct any misleading omission in a proposed report." *Majka*, 365 Ill. App. 3d at 369.

Here, the same analysis applies, and we must presume the version put forth by the plaintiffs in the bystander's report is factually accurate and that the plaintiffs were interrupted during their case in chief and not permitted to present their case fully.

¶ 23    Having established that the bystander's report accurately reflects the proceedings during the trial and that the plaintiffs' presentation of evidence was prematurely terminated, we next turn to whether their complaint was sufficiently pled to establish a cause of action so as not to warrant such premature termination. The plaintiffs filed a small claims complaint pursuant to Illinois Supreme Court Rule 282 (eff. Jan. 1, 2018), alleging defamation, and stating that:

> "Defendant has committed defamation against plaintiffs, including knowingly and repeatedly falsely accusing plaintiffs of crimes to both neighbors and police. As a result of the defendants' actions, the plaintiffs, who lived next door to the defendant, moved away. Plaintiffs are requesting partial recovery of moving costs."

Illinois Supreme Court Rule 282 states in part:

> "An action on a small claim may be commenced by paying to the clerk of the court the required filing fee and filing a short and simple complaint setting forth (1) plaintiff's name, residence address, e-mail address (required for attorneys only), and telephone number, (2) defendant's name and place of residence, or place of business or regular employment, and

(3) the nature and amount of the plaintiff's claim, giving dates and other relevant information." Ill. S. Ct. R. 282(a) (eff. Jan. 1, 2018).

¶ 24    All that is necessary in a small claims case for the complaint to be sufficient is that it clearly notifies the defendant of the nature of the plaintiffs' claim. *Porter v. Urbana-Champaign Sanitary District*, 237 Ill. App. 3d 296, 300 (1992). "Particularly in small claims cases, the complaint is to be liberally construed because the small claims procedure is designed to be simple and inexpensive." *Id.*

¶ 25    Here, the small claims complaint drafted and filed by the plaintiffs was simple, and it notified the defendant that the plaintiffs were alleging that the defendant had engaged in defamation and provided examples of such conduct. They described the damages incurred and sought reimbursement for moving expenses. "A complaint need not set out the evidence plaintiff intends to present, but only ultimate facts [citation], and this is particularly so where a small claims complaint is involved." *Id.* at 302. If the complaint clearly informs the defendant of the nature of the plaintiff's claim, a cause of action has been stated. *Toth v. England*, 348 Ill. App. 3d 378, 385 (2004). We find that the plaintiffs' complaint sufficiently notified the defendant of the nature of their claim and, thus, stated a cause of action.

¶ 26    We next address the trial court's finding that it was not proper for the plaintiffs to plead the cause of action of defamation as a small claims case. In *Toth*, the plaintiff filed a small claims case, alleging, among other claims, defamation. *Id*. An issue on appeal was whether the plaintiff properly stated a claim, as he failed to support his complaint with specific allegations about the defendant. *Id.* Despite the lack of specific allegations, we found that the small claims complaint was sufficient to notify the defendants of the claim: "It is not necessary to plead all the elements that are essential to state a cause of action in a small claims complaint." *Id.* (citing *Simmons v. Fox*

10

*Valley Dodge*, 16 Ill. App. 3d 197, 198 (1973)). The same analysis applies to the instant matter, and we find that the plaintiffs' small claims complaint properly pled a defamation action. In other words, the trial court was incorrect when it found that the plaintiffs "wrote the complaint wrong" by filing a defamation claim as a small claims case.

¶ 27 Based on the incorrect belief that the plaintiffs could not plead defamation in a small claims case, the trial court prematurely terminated the plaintiffs' presentation of their case in chief. This leads us to the next issue of whether it was error for the trial court to terminate the plaintiffs' evidentiary presentation before its conclusion.

¶ 28 "[D]ue process in a civil case requires notice, an opportunity to present evidence and argument on one's own behalf, a right to cross-examine adverse witnesses, and impartial rulings being entered on the evidence offered." *In re Carolyn J.S.*, 2024 IL App (3d) 220250, ¶ 22. Here, the basic tenet of the right to present evidence was violated when the trial court failed to allow the plaintiffs to present their evidence to completion. The bystander's report, certified by the trial court, reveals that the plaintiffs attempted numerous times to inform the trial court that they had additional evidence they wanted to present but were not being given the opportunity to do so. For instance, at one point, "Dr. Temko began to continue. Judge Motil stopped Dr. Temko from continuing," and at another point "Dr. Temko asked about being able to present his argument," and yet a third time "Dr. Temko said he hadn't even gotten to present the instances of defamation that the case was about." Instead of allowing the plaintiffs to present their evidence to conclusion, the trial court interrupted them and ruled in favor of the defendant. "A trial court may not enter judgment for a defendant on the basis of the insufficiency of the plaintiff's evidence until the close of the plaintiff's case." *Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.*, 128 Ill. App. 3d 763, 767 (1984). The repeated interruptions and the failure to allow the plaintiffs to present

their case to conclusion violated their due process rights. While this was a small claims case, and the rules are somewhat relaxed, the plaintiffs are still entitled to present their case before the trial court. Accordingly, we find that it was error for the trial court to terminate the presentation of evidence by the plaintiffs prematurely.

¶ 29 Because we find the trial court erred by not permitting the plaintiffs to present their case in chief to conclusion, we need not address the merits of their defamation claim, nor the defendant's arguments against the finding of defamation contained in her brief. Based on the foregoing, we reverse the trial court's judgment in favor of the defendant and remand to the trial court for a complete hearing on the plaintiffs' small claims complaint, with instructions to allow the plaintiffs to amend their small claims complaint should they desire to do so.

¶ 30                                    III.  CONCLUSION

¶ 31 For the foregoing reasons, we reverse the trial court's judgment in favor of the defendant and remand to the Madison County circuit court for a complete hearing on the plaintiffs' small claims complaint, with instructions that the plaintiffs to be granted leave of court to amend their complaint at their discretion.

¶ 32 Reversed and remanded with directions.